**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――x

LONNIE LEE HAMILTON, as the Administrator of
the estate of LONNIE LAMONT HAMILTON,

                         Plaintiff,

        -against-                                              18 Civ. 9734 (CM)

JOSEPH MEAD and ALFRED ZEINA,

                         Defendants.

―――――――――――――――――――――――――――x

**MEMORANDUM DECISION AND ORDER GRANTING**
**DEFENDANTS' MOTION TO TRANSFER**

McMahon, C.J.:

On July 23, 2018, Lonnie Lee Hamilton ("Plaintiff"), father of and Administrator of the

Estate of Lonnie Lamont Hamilton ("Decedent"), filed a complaint in Bronx County Supreme

Court alleging claims against two corrections officers at Marcy Correctional Facility under 42

U.S.C. § 1983 and the First and Eighth Amendments of the U.S. Constitution.  (*See* Ex. A to

Notice of Removal, Dkt. No. 1 (hereinafter, "Compl.").)  The claims relate to the tragic events of

March 18, 2016, when the Decedent committed suicide by hanging in his cell, and prison

officials thereafter buried him on the grounds at Marcy without notifying his family.

On October 23, 2018, Defendants, Officers Joseph Mead ("Mead") and Alfred Zeina

("Zeina"), removed the action to this district pursuant to 28 U.S.C. § 1446(a).  (Notice of

Removal, Dkt. No. 1.)

In both their notice of removal and their answer, Defendants expressly reserved as a defense that the case should be transferred to the Northern District of New York.  (Notice of Removal ¶ 7, Dkt. No. 1; *see also* Answer ¶ 56, Dkt. No. 10 ("Answer").)

Defendants now seek an order transferring the action to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 13.)

For the reasons that follow, Defendant's motion to transfer is granted.

## I.     Background

### A.     Facts

Decedent was an inmate at Marcy Correctional Facility ("Marcy"), a New York State Department of Corrections and Community Supervision (hereinafter, "DOCCS") facility, located eight miles from Utica, in Oneida County, in the Northern District of New York.  He was sent to Marcy in January 2015.  (Compl. ¶ 15.)  During his incarceration, Decedent was on several anti-depressant medications; he had a history of depression, self-mutilation, and suicidal ideations. (*Id.* ¶ 16.)

On March 15, 2016, while in solitary confinement, Decedent tried to tie a sheet around his neck.  (*Id.* ¶ 17.)  As a result, he was placed on suicide watch, which meant that he was not given any sheets or clothes—just a tear-proof smock to wear, and a tear-proof blanket.  (*Id.*) Decedent was taken off suicide watch the next day but remained in solitary confinement.  (*Id.* ¶ 18.)

On March 18, 2016, Defendants Mead and Zeina were employed by DOCCS, working as officers in charge of the Special Housing Unit, where Decedent's cell was located.  (Compl. ¶¶ 18–19; *see also* Answer ¶¶ 12–14, 19).[1]

Plaintiff alleges that, to punish Decedent for his earlier suicide attempt and "for the trouble he caused by having to be placed on suicide watch," Mead and Zeina denied Decedent food, sufficient fluids, and recreation time, and "goaded and encouraged the Decedent to commit suicide."  (*Id.* ¶¶ 19–20, 37–39.)

Specifically, Defendants allegedly told Decedent that he would not be receiving any food while he was assigned to their shift.  (*Id.* ¶ 21.)  When Decedent requested food—several times—Defendants allegedly replied with statements like, "I thought you're going to kill yourself"; "You should just kill yourself"; "You don't need food, you're going to be dead anyway"; and "Do us a favor and kill yourself."  (*Id.* ¶ 23.)  In total, Decedent was allegedly denied meals for more than 24 hours.  (Court of Claims Compl. ¶ 27, annexed to Compl. at Ex. C.)

Mead and Zeina also denied Decedent's request for recreation time, which by this time had also been withheld for more than 24 hours.  (Compl. ¶ 22; Court of Claims Compl. ¶ 27, annexed to Compl. at Ex. C.)  When he complained, they sprayed him with a fire extinguisher— "wet" his cell—through the food slot on his cell door.  (Compl. ¶ 22.)

After Decedent kicked and banged on his cell door for at least fifteen minutes, begging for food, Defendants blasted the air conditioning, both to "freeze" him and to prevent him from talking with other inmates through the vents.  (*Id.* ¶ 24.)

---

[1]  Defendants Mead and Zeina admit only that, on March 18, 2016, they were employed as corrections officers at Marcy, assigned to the Special Housing Unit.  (Answer ¶¶ 12–14, 19.)

Plaintiff alleges that, after being subject to this heinous treatment, on March 18, 2016, Decedent tied a torn strip of bedsheet to a vent in his ceiling and then tied the other end around his neck. (*Id.* ¶ 25.)

Decedent was last seen alive at approximately 11:00 a.m. by Mead and Zeina while they were making their rounds. (*Id.* ¶ 29.)

At about 11:24 a.m., Defendants looked inside Decedent's cell and saw him hanging from the ceiling, his left leg on the bed and his right leg on the floor. (*Id.* ¶ 26; *see also* Answer ¶ 26 (admitting that on March 18, 2016, Defendants observed Decedent hanging from the ceiling of his cell).) The Complaint alleges that, "At that point the defendants thought that he was still conscious." (Compl. ¶ 26.) Defendants did not immediately open the cell door, but instead decided to call for assistance. (*Id.* ¶ 27.) Mead allegedly told Zeina "not to make the call as it will involve a lot of paperwork, and they both walked away without calling for help." (*Id.*)

At some point, a third officer (identity not specified) radioed the sergeant, who arrived in about two minutes. (*Id.* ¶ 28.) The men cut him down and attempted C.P.R. (*Id.*) Decedent was taken to St. Elizabeth Medical Center, where he was pronounced dead at 12:36 p.m. (*Id.*)

Officials at Marcy then "fail[ed] to notify [Decedent's] family including but not limited to his father, of his death." (Notice of Intent to Sue dated June 9, 2016 ¶ 2, annexed to Notice of Removal at Ex. B.)

On March 28, 2016, Decedent's body was "buried in a plain, wooden box, in [New York State] issued inmate clothing, without embalming at a cemetery located on the grounds of" Marcy Correctional Facility. (Court of Claims Compl. ¶ 20, annexed to Notice of Removal at Ex. C.)

"After the burial," officials at Marcy "continually failed to notify the family of their son's death." (Notice of Intent to Sue dated June 9, 2016 ¶ 2, annexed to Notice of Removal at Ex. B.)

### B.      Procedural History

Plaintiff did not learn of his son's death until sometime in May 2016, by his own investigation. (Court of Claims Compl. ¶ 58, annexed to Notice of Removal at Ex. C.)

Plaintiff was forced to take legal action to exhume his son's body, which, because it had been buried without embalming, was disfigured. (*Id.*)

On October 20, 2016, the Surrogate's Court of the State of New York, Oneida County—the county where Lonnie Lamont Hamilton died—granted Letters of Administration to Lonnie Lee Hamilton, qualifying him as the Administrator of the Estate of Lonnie Lamont Hamilton. (Compl. ¶ 3; *see also* Letters of Administration, annexed to Notice of Removal at Ex. A.)

On February 16, 2017, after serving Notices of Intent to Sue on the New York State Attorney General's Office, (*see* Notices of Intent to Sue, annexed to Notice of Removal at Ex. B), Plaintiff commenced an action in the New York State Court of Claims on behalf of himself and as Administrator of Decedent's estate to recover damages against (i) the State of New York, DOCCS, Marcy Correctional Facility; (ii) Corrections Officers Mead, Zeina, and Colleen Coppola in their official capacities; Sergeant Keith Marshall, Nurse Practitioner Karen Tourtelot, Rehabilitation Counsellor Ii Julie Calato, Reverend Sherman Dunmore, and Superintendent Mark Kinderman. (Compl. ¶ 4; Court of Claims Compl., annexed to Notice of Removal as Ex. C.)

The claim was originally e-filed in the New York District of the New York State Court of Claims, which is one of only two Court of Claims districts in which e-filing is permitted, the other being the Albany District. (*See* Letter from Eli Wagschal, Esq., dated Feb. 13, 2019, Dkt. No. 24 ("Wagschal Letter")); *see also* Filing by Electronic Means, New York State Court of

Claims, https://www.nycourts.gov/COURTS/nyscourtofclaims/efiling-instructions.shtml
(accessed Feb. 13, 2018).[2]  However, pursuant to 22 NYCRR § 206.4(a), a claim automatically
gets transferred to the district in which the claim accrued.  On March 7, 2017, it was determined
that Plaintiff's claim accrued in Oneida County.  (*See* Notice from Court of Claims dated Mar. 7,
2017, appended to the Wagschal Letter as Ex. A.)  Thereupon, the case was transferred to the
Utica District, for which e-filing is not permitted, (*id.*), and, as is true of actions in the New York
Court of Claims, was assigned to a judge closest to the county where the events in suit arose.
This was the Honorable Christopher J. McCarthy, who maintains chambers in Albany.  *See*
Judges' Chambers, New York State Court of Claims, https://www.nycourts.gov/courts/nys
courtofclaims/chambers.shtml (accessed Feb. 13, 2018) (listing no individual judge's chambers
in the Utica District).  All of this to say, the Court of Claims case is being handled in the
Northern District of New York.

    On June 28, 2018, Plaintiff filed with the Court of Claims a consent stipulation of
voluntary dismissal of the action, without prejudice, against all defendants except the State of
New York.  (Compl. ¶ 5; *see also* Stipulation of Discontinuance, annexed to Notice of Removal
at Ex. D.)  The stipulation also withdrew all claims against the State of New York except those
for negligent supervision, wrongful death, state constitutional violations, negligent infliction of
emotional distress (on behalf of both Plaintiff and Decedent), and loss of sepulcher. (Compl. Ex.
D at 2.)

    Recently, Judge McCarthy also issued an order granting in part and denying in part the
State of New York's motion to dismiss Plaintiff's Court of Claims case.  (*See* Decision and

---

[2]      Defendants' counsel repeatedly represented in its brief that Plaintiff "has a pending parallel action against
the State in Albany."  (Defs. Br. at 2.)  Counsel later clarified that "the case is pending in the Utica District, although
many matters are handled through the Albany District."  (*See* Letter from Barbara K. Hathaway, Esq., Assistant
Attorney General, dated Feb. 13, 2019, Dkt. No. 25.)

Order dated Feb. 5, 2019, annexed to Wagschal Letter at Ex. B.)  The court denied the State of New York's motion to dismiss the claims for wrongful death, loss of sepulcher, negligent supervision, and negligent infliction of emotional distress (as to Decedent), but it granted the State's motion to dismiss the claims for state constitutional violations.  (*Id.*)

On July 23, 2018, Plaintiff, who is a resident of Bronx County, (Compl. ¶ 10), commenced the instant action in Bronx County Supreme Court against corrections officers Joseph Mead and Alfred Zeina in their individual capacities, (*id.* ¶ 8).

The Complaint plead two causes of action:  the first under 42 U.S.C. § 1983, arising out of violations of Decedent's Eighth Amendment right against cruel and unusual punishment; and the second under 42 U.S.C. § 1983, arising out of violations of Decedent's First Amendment right to free speech and associational activity.  (*Id.* ¶¶ 32–56.)

Defendants removed the case to this District on October 23, 2018.  (*See* Notice of Removal, Dkt. No. 1.)

On December 4, 2018, Plaintiff filed a notice of voluntary dismissal as to the second cause of action, without prejudice.  (Dkt. No. 9.)

On December 17, 2018, Defendants answered the Complaint and included a demand for a jury trial.  (Dkt. No. 10.)  Defendants' answer stated that they objected to venue in the Southern District of New York.  (Answer ¶ 7; *see also id.* ¶ 56 (listing transfer of venue as an affirmative defense).)

On January 16, 2018, Defendants moved to transfer the case to the Northern District of New York, pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 13.)

## II.    Standard of Review

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

When considering a motion to transfer pursuant to section 1404(a), a Second Circuit court generally applies a two-part analysis. "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate . . .  several factors relating to the convenience of transfer and the interests of justice." *Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 576 (S.D.N.Y. 2015) (citing *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006)).

Some of the factors the court will consider in making its decision are: "(1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of the circumstances." *Keitt v. New York City*, 882 F. Supp. 2d 412, 458–59 (S.D.N.Y. 2011).

In accord with 28 U.S.C. § 1404(a)'s instruction to permit transfer "[f]or the convenience of parties and witnesses," the first three factors are the most significant. "The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses." *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995) (citing *Saminsky v. Occidental Petroleum Corp.*, 373 F. Supp. 257, 259 (S.D.N.Y. 1974)).

8

Generally, a district court has "broad discretion in making determinations of convenience under Section 1404(a)." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Moreover, "Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Hubbell*, 883 F. Supp. at 962–63 (citing *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)).

The party seeking a change of venue has the burden of establishing by clear and convincing evidence that transfer is warranted. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010); *accord Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990).

## III. Discussion

### A. The Action Could Have Been Brought in the Transferee Court

No party disputes that Plaintiff could properly have brought the case in the Northern District of New York. Under 28 U.S.C. § 1391(b)(2), an action may be brought, among other places, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" *Id.* The only claim in this case is brought pursuant to 42 U.S.C. § 1983, and is based on factual allegations concerning cruel and unusual punishment that occurred at Marcy Correctional Facility, 9000 Old River Road, Marcy (Oneida County), New York, which is located in the Northern District. (*See* Compl. ¶ 2; Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue at 5, Dkt. No. 14 ("Defs.' Br.").)

Transfer therefore depends on the ten "convenience" factors. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 395.

**B.      Collectively, the Convenience Factors Weigh in Favor of Transfer**

**1.  Convenience of Witnesses**

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (citing *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998)).  While the number of witnesses in each of the candidate fora is one consideration, the court must also "qualitatively evaluate the materiality of the testimony that witnesses may provide." *Defenshield Inc. v. First Choice Armor & Equip., Inc.*, No. 10-cv-1140, 2012 WL 1069088, at *11 (N.D.N.Y. Mar. 29, 2012).

Defendants argue that this factor "clearly favors transfer because the defendants reside within the Northern District of New York and it is where the principal events of this case occurred, thus, any other witnesses are also likely to be located in the Northern District." (Defs.' Br. at 6 (internal quotations and citations omitted).)  Defendants argue that it is "readily apparent from the face of the Complaint that the vast majority of potential non-party witnesses would consist of either inmates or DOCCS employees assigned to Marcy." (Reply Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue at 2, Dkt. No. 22 ("Defs.' Reply").)

In support, Defendants attach an excerpt from the New York State Police Incident Report for Decedent's suicide, dated March 18, 2016, which lists the "associated persons" interviewed by police on that day.  (Incident Report, annexed to Defs.' Reply as Ex. 1.)  These include three inmates; (ii) three employees of Marcy (a corrections officer, counselor, and nurse practitioner, each of whom was initially named in the Court of Claims lawsuit); and (iii) two other persons not marked "inmate." (*Id.*)  Defendants argue that these are the same witnesses who will be called to testify in Plaintiff's case pending before the Court of Claims.  (Defs. Br. at 5.)

Plaintiff, by contrast, has attached the affidavit of Dayvon Williams, a former inmate at Marcy who personally witnessed the events giving rise to this action. (*See* Aff. of Davon Williams ("Williams Aff."), Ex. A to Pl.'s Aff. and Mem. of Law in Opp. to Defs.' Mot. to Transfer Venue, Dkt. No. 21 ("Pl.'s Opp.").) Mr. Williams is currently a resident of the Bronx and affirms that he would be greatly inconvenienced if compelled to travel. (*See* Pl.'s Opp. at 5; *see also* Williams Aff. ¶ 6.) Mr. Williams further affirms that, if called, he would "testify as to what I observed during the final hours of Mr. Hamilton's life including to witnessing Mr. Hamilton's request for food being denied by the corrections officers' [*sic*] and their responses 'you don't need food, you're going to be dead anyway,'" *etc.* (Williams Aff. ¶ 5.)

Plaintiff has also identified as a witness Dr. Ashar Kunjlata, M.D., a full-time pathologist practicing in Valhalla, New York, who would be "greatly inconvenienced if compelled to travel from Westchester County to Upstate New York to testify as to her findings and observations from the autopsy." (Pl.'s Opp. at 5.)

There is no question that the vast majority of the witnesses in this case—indeed, all of them except Plaintiff, Mr. Williams, and Dr. Kunjlata—are located in the Northern District of New York. This includes the Defendants, other corrections officers (one of whom was originally named as a defendant in the Court of Claims suit), the medical personnel at Marcy, and the coroner who conducted the original autopsy in Oneida County.

Moreover, it is clear that most, if not all, of these same people will be called as witnesses in the parallel lawsuit pending in the Court of Claims against the State of New York. Although the three Marcy employees identified on the Incident Report are no longer defendants to that claim, the Court can infer from the face of both this Complaint and the Court of Claims Complaint that these witnesses are likely to provide material testimony regarding the events that

took place at Marcy and culminated in Decedent's suicide on March 18, 2016. *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) (A "court must qualitatively evaluate the materiality of the testimony that the witnesses may provide."). This testimony would include, but not be limited to, any health care and mental health care provided to Decedent prior to March 18, 2016; the circumstances of his being placed in solitary confinement; the circumstances of his being placed on suicide watch; and the circumstances of his being taken off of suicide watch, but denied food, fluids, and recreation for 24 hours.

Ideally, the convenience of the witnesses could be accommodated by allowing the upstate witnesses to be deposed there, while the three downstate witnesses are deposed in New York City or Westchester. Ideally, the parties would also conduct discovery in the pending actions so that witnesses give one EBT to be used in both lawsuits. It will be far easier for one of my colleagues in the Northern District of New York to coordinate suit with a Court of Claims Judge who sits in Albany, saving time and expense.

Therefore, the Court finds that the convenience of witnesses—the "most important factor"—weighs in favor of Defendants. *Herbert Ltd. P'ship*, 325 F. Supp. 2d at 286.

### 2. Convenience of the Parties

Although the convenience of the parties is an important factor, "where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." *Wagner v. New York Marriott Marquis*, 502 F. Supp. 2d 312, 316 (N.D.N.Y. 2007) (internal quotation omitted); *accord EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 353 (E.D.N.Y. 2012).

Defendants argue that convenience of the parties favors the Northern District of New York. (Defs.' Br. at 5.) In support, they reiterate briefly that Defendants reside in the Northern District, but focus the bulk of their briefing on arguing why Plaintiff would *not* be

inconvenienced: "Plaintiff can hardly contend that he would be materially inconvenienced by a transfer of this case to the federal court within the very district where he initially filed suit against these defendants and where he has a pending parallel action against the State." (*Id.* at 2, 5.)

Plaintiff contends that it will be inconvenient for him to litigate in the Northern District of New York. (Pl.'s Opp. at 6.) He has attached to his memorandum of law his personal affidavit, "in which he affirms that in addition to the burden of travel time, should this case be transferred to the Northern District, it will be emotionally exhausting for him to return to the place where he witnessed his son's body being exhumed." (Pl.'s Opp. at 6; *see also* Aff. of Lonnie Lee Hamilton ¶ 6, annexed to Pl.'s Opp. at Ex. B.)

The Court finds that both parties have made a showing that they would be inconvenienced without the relief they seek in this transfer motion. The Court assigns no weight to Plaintiff's decision to pursue a case in the Court of Claims, because he had no choice of venue; rather, a case is automatically assigned by the Court based on where the claim accrues. Thus, Plaintiff's filing a claim at the New York State Court of Claims is not equivalent to his choosing between two federal districts or state counties in which to file a civil suit. At the Court of Claims, the choice is between litigating in the assigned venue, or not filing a claim at all.

Since both Parties are "equally inconvenienced regarding venue," this factor is weighs against transfer. *Wagner*, 502 F. Supp. 2d at 316; *see also EasyWeb Innovations*, 888 F. Supp. 2d at 353.

### 3. Locus of Operative Fact

"The locus of operative facts is a primary factor in determining whether to transfer venue." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012) (quoting *Tomjai*

*Enters., Corp. v. Laboratorie Pharmaplus USA, Inc.*, No. 12-cv-3729, 2012 WL 3104891, at *6 (S.D.N.Y. July 31, 2012)).

The Parties do not dispute that the locus of operative fact for this litigation is the Northern District of New York, because that is the district where Marcy is located. (*See* Defs.' Br. at 7.) Indeed, this is evidenced by the Court of Claim's assigning venue to the Utica District.

Accordingly, the Court finds that this factor weighs strongly in favor of Defendants.

### 4. Availability of Process to Compel the Attendance of Unwilling Witnesses

Fed. R. Civ. P. 45(c)(1) states that a "subpoena may command a person to attend a trial, hearing, or deposition only as follows:  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1).

Defendants argue that availability of compulsory process favors transfer to the Northern District because "a district court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state," Fed. R. Civ. P. 45(c)(1)(A), and "it can be inferred that the non-party witnesses in this case will either be inmates or employees of Marcy Correctional Facility, which lies more than 200 miles away from the Southern District Courthouse in White Plains." (Defs. Br. at 7–8.)  "By contrast, the Northern District Courthouse in Utica lies approximately 8 miles from Marcy." (*Id.* at 8.)

Plaintiffs counter that at least some non-party witnesses, such as Mr. Williams, reside within the Southern District. (Pl.'s Opp. at 8.)

Because most non-party witnesses reside or are employed within 100 miles of Marcy, in the Northern District, the Court finds this factor weighs in favor of Defendants.  Were the case

tried in the Southern District, the Court would be unable to compel the majority of witnesses to testify in person, which might necessitate a significant amount of evidence's coming in by deposition.  Of course, Mr. Williams and Dr. Kunjlata may end up testifying at trial by deposition, as they cannot be subpoenaed in the Northern District, but there are simply fewer such witnesses.

### 5.  The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Defendants argue that "Documentary evidence for this case would appear to be primarily located at Marcy" and "To the extent that any records are uniquely kept at DOCCS' principal office, transfer is favored because the DOCCS principal office is in Albany, also located in the Northern District." (Defs.' Br. at 7.)

Plaintiff counters that Defendants have failed to identify which documents are in the Northern District or detail the alleged burden that Defendants would incur in the absence of a transfer.  (Pl.'s Opp. at 7 (citing *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-cv-11799, 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) ("A defendant's assertion that documents are located in the transferee forum is entitled to little weight in the absence of a detailed showing as to the burden that defendant would incur in the absence of transfer.")).)  At the same time, Plaintiff has identified no documents or other sources of proof that are likely to be found in the Southern District.

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010); *see also United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 458 (S.D.N.Y. 1997) (recognizing that the

Government, like private parties, may take advantage of "modern transportation and shipping capabilities"). Nonetheless, Defendants have made some showing that the necessary documents, as well as any physical evidence, are likely to be kept in the Northern District, either at Marcy of the DOCCS main office.

The Court therefore finds that the "location of documents is a minor concern, but it is one that favors" the Northern District. *United States v. Estrada*, 880 F. Supp. 2d 478, 484 (S.D.N.Y. 2012).

### 6. Relative Means of the Parties

The Parties both argue that this factor is neutral. (*See* Defs.' Br. at 8 n.6; Pl.'s Opp. at 8.)

### 7. The Forum's Familiarity with the Governing Law

This factor, too, is neutral, because both the Southern District and Northern District are equally familiar with the law governing Section 1983 actions. (*See* Defs.' Br. at 8 n.6; Pl.'s Opp. at 9.)

### 8. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *Berman*, 30 F. Supp. 2d at 659; *see also D.H. Blair & Co.*, 462 F.3d at 107 (stating, as part of 28 U.S.C. § 1404(a) analysis, "[Plaintiff] chose New York as its forum, a decision that is given great weight") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

In considering how much deference to accord a plaintiff for his chosen forum, the Second Circuit has advised courts, in the context of a motion to dismiss on grounds of *forum non conveniens*, to "consider a plaintiff's likely motivations in light of all the relevant indications. We thus understand the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give greater deference to a plaintiff's forum choice to the extent that

16

it was motivated by legitimate reasons, including the plaintiff's convenience [], and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001).

Therefore, when deciding a motion to transfer venue under 28 U.S.C. § 1404(a), "[T]he plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, or where the plaintiff is a resident of the forum district." *Berman*, 30 F. Supp. 2d at 659; *see also Defenshield*, 2012 WL 1069088, at *15 (considering plaintiff's residency in his chosen forum in denying defendant's motion to transfer). Conversely, "the emphasis placed by a court on this choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Berman*, 30 F. Supp. 2d at 659.

It is undisputed that Plaintiff is a resident of the forum district, and that he has lived here his whole life. (Pl.'s Opp. at 9; Hamilton Aff. ¶ 1; *see also* Compl. ¶ 7.) However, Defendants argue that Plaintiff's choice of forum should be "afforded little weight" because the operative facts of the litigation do not bear any connection to the Southern District of New York. (Defs.' Br. at 5.) They also argue, in a footnote, that Plaintiff's counsel's website touts the Bronx as a "more favorable plaintiffs' venue," thereby calling into question Plaintiff's motivation for bringing the case in the Southern District. (Defs.' Br. at 5 n.3.)

This Court does not draw any adverse inference against Plaintiff's choice of forum from language on his counsel's website. Plaintiff was born in Bronx County and has lived there his entire life. (Hamilton Aff. ¶ 1) It is eminently reasonable that Plaintiff would want to litigate in his home, and Defendants have cited no reason why the Court should attribute this decision to gamesmanship.

Defendants are correct, however, that the Southern District bears no connection to the operative facts, and therefore that Plaintiff's choice of forum is entitled to less weight than it otherwise would be.

The Court concludes that this factor weighs slightly in favor of retaining venue in the Southern District.

### 9.   Trial Efficiency

Defendants argue that transfer to the Northern District will promote an efficient trial because "[w]hen a case is in its earliest stages, it is generally not inefficient to transfer the case." (Defs.' Br. at 8 (quoting *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018)). However, while substantial prosecution of a case—completion of discovery, the court's familiarity with the case, *etc.*—might weigh against a motion to transfer, the mere fact that a case is at its earliest stages, absent any other considerations—average length of trials, cases per judge, *etc.*—do not weigh in favor of a motion to transfer.

Nonetheless, the Court finds that trial efficiency does weigh in favor of transfer. Ideally, discovery in the state and federal cases will be coordinated between Judge McCarthy and the presiding federal judge—something that is more easily accommodated in the Northern District. *See Bombardier Capital Inc. v. Solomon*, No. 00-cv-0848, 2000 WL 1721138, at *6 (S.D.N.Y. Nov. 17, 2000) ("Even though the related litigation is pending in California state court, it is within the transferee District: 'having the actions litigated in the same geographical area would still facilitate the coordination of pre-trial discovery, and save time and energies of witnesses, the parties, and the attorneys.'") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 743 F. Supp. 260, 264 at n.3 (S.D.N.Y. 1990)); *see also Levitt v. State of Maryland Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986) (transferring federal case to same district in which state court action was pending).

Additionally, the Southern District's docket is at present very congested, with record numbers of filings last year and six[3] judicial vacancies. I appreciate that the Northern District is down a judge, as well; however, we are all very busy. *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) ("Although docket congestion is insufficient on its own to support a transfer motion, it is a proper factor for the Court to consider and is accorded some weight.") (internal quotations omitted).

This factor, therefore, weighs in favor of transfer.

### 10. Interests of Justice, Based on the Totality of the Circumstances

Defendants reiterate that "the location and convenience of the non-party witnesses, documents, all defendants, and the existence of a pending parallel action in the State Court of Claims within the Northern District, favors [*sic*] transfer . . . in the interests of justice, particularly as the alleged incidents are factually unrelated to the Southern District." (Defs.' Br. at 8.)

Plaintiff argues that "Allowing this case to remain in the Southern District of New York . . . will reduce the possibility that the jury will be influenced improperly by matters other than the evidence adduced at trial." (Pl.'s Opp. at 10.) They argue that Utica, NY has only about 9,000 residents of African American descent; and that the Northern District contains thirty New York State correctional facilities, such that the jury pool is likely to include many individuals, as well as their friends and family members, who are employed by Marcy or by other DOCCS facilities. (*Id.*)

"In potential jury bias cases based on presumed prejudice, the basic principle to be upheld is the fundamental fairness of the trial." *Haworth, Inc. v. Herman Miller, Inc.*, 821 F.

---

[3]    There are seven *de facto* vacancies, if one considers that one of my colleagues, The Hon. Laura Taylor Swain, is, by order of Chief Justice Roberts, preoccupied with the massive PROMESA litigation in Puerto Rico.

Supp. 1476, 1480 (N.D. Ga. 1992).  "When resolving questions involving fundamental fairness regarding potential juror bias, there are two standards which guide the analysis of this question, the 'presumed prejudice' standard and the 'actual prejudice' standard." *Id.*

Plaintiff has argued, first, presumed racial prejudice.  While "discrimination on the basis of race, 'odious in all aspects, is especially pernicious in the administration of justice,'" *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 859 (2017) (quoting *Rose v. Mitchell*, 443 U.S. 545, 555 (1979)), the relevant standard for presumed prejudice is "whether the prospective jurors have such fixed opinions that they are unable to judge impartially and resolve the dispute between the parties." *Haworth*, 821 F. Supp. at 1480.  "Moreover, an unsubstantiated claim of jury bias . . . is insufficient to compel a district court to transfer a case." *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 465 (6th Cir. 2011) (unpublished); *see also N. Indiana Pub. Serv. Co. v. Envirotech Corp.*, 566 F. Supp. 362, 365 (N.D. Ind. 1983) ("Statistical evidence or the results of opinion polls are often used to support a pre *voir dire* request for transfer because of prospective juror prejudice.").

Plaintiff has not met his burden.  The only evidence he cites in support of his bias claim is the number of residents of African American descent in Utica, which is just one city in the Northern District (and therefore would not constitute the entire venire), and whose African American-descended population comprises 14.3% of the overall population.  (Pl.'s Opp. at 10.) Plaintiff does not compare this figure to the African-American descended population in the Southern District, or otherwise explain why prospective jurors of any race in the Northern District would be unable to judge this matter impartially.  This falls well short of the required showing. *Cf. Mendez v. Puerto Rican Int'l Companies, Inc.*, No. 05-cv-00174, 2012 WL 13103005, at *2 (D.V.I. Aug. 3, 2012) (concluding that a transfer of venue was not warranted in

the interests of justice because defendant, operator of a refinery on St. Croix, could not show that residents of St. Croix were so pervasively biased against it and that bias could not be screened during *voir dire*). I have no doubt that my esteemed Northern District colleagues can select a truly impartial jury.

Second, Plaintiff has argued presumed prejudice by corrections officers, their family members, and their friends who may be in the venire panel. There are indeed quite a few correctional facilities in the Northern District of New York. There are also quite a few—state and federal— in the Southern District of New York. There are numerous jurors employed as or related to corrections officers in both districts. Those who harbor bias can be weeded out during jury selection. *See Weishaupt v. Bos. Coll.*, No. 11-cv-1122, 2012 WL 1439030, at *6 (M.D.N.C. Apr. 24, 2012) (giving no weight to plaintiff's arguments about facing bias in defendant's home state, because plaintiff's "concerns [were] speculative, at best, on th[e] record" before the court).

Third, Plaintiff has argued actual prejudice because of the substantial number of eligible jurors that might receive their paycheck from DOCCS. These jurors will no doubt be struck for cause.

Because neither party has provided any independent reason in the interests of justice to grant or deny the motion for transfer, the Court finds that this factor is neutral.

### C.    Defendants' Motion to Transfer Is Granted

In sum, the Court finds that the most important single factor, the convenience of witnesses, weighs in favor of transfer. In addition, the instant case has no factual connection to the Southern District of New York, and there is a pending parallel action in the Utica District of the New York State Court of Claims, during which it was already determined that the claim

accrued upstate.  Moreover, this Court's limited subpoena power with respect to upstate witnesses, the location of relevant documents and other evidence at Marcy, and considerations of judicial efficiency, particularly as regards the Northern District's ability to better coordinate discovery with the New York State Court of Claims, all solidly support transfer.

The Court does not make this decision lightly.  I am very sympathetic to Mr. Hamilton, who has provided a sworn affidavit stating that it will be both inconvenient and emotionally taxing for him to litigate this case in the Northern District.  But I harbor no doubt that my colleagues in the Northern District will do both Mr. Hamilton and Mr. Williams the courtesy of ordering that their depositions be taken in the Bronx, or in another location that is convenient for them, and will coordinate discovery with the Court of Claims in order to minimize the trauma to Mr. Hamilton and the inconvenience to Mr. Williams.

However, because virtually all other factors support transfer to the Northern District, the Court grants Defendants' motion to transfer venue.

## IV.     Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' motion for a transfer of venue to the Northern District of New York.

The Clerk of Court is respectfully requested to close the motion at Docket Number 13.

In light of this decision, the conference scheduled for tomorrow, Friday, February 15, 2019, at 10:00 a.m., is cancelled.

Dated: February 14, 2019

_____
Chief Judge

22

BY ECF TO ALL PARTIES